F. L. KRAEMER & COMPANY *v.* UNITED STATES

No. 8078.—

Entry No. 800778.

(Decided January 30, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of certain round and square onyx slabs exported from Mexico on May 31, 1947. The invoiced and entered unit prices were as follows:

|  | Mexican Pesos |
|---|---|
| 5″ round slabs | 1. 50 |
| 8″ " " | 3. 00 |
| 6″ square " | 2. 00 |

It is agreed by counsel for the parties that no foreign value as defined in section 402 (c) of the Tariff Act of 1930, as amended (19 U. S. C. § 1402 (c)), existed for the merchandise at bar, and the invoiced and entered prices are claimed by the plaintiff to represent statutory export value as defined in section 402 (d) of the said act.

Appraisement was made on the basis of cost of production, which is defined in section 402 (f) of the tariff act, at the invoiced unit prices plus 18.8 per centum, packed. For ready reference, the provisions of section 402 (d) and (f), *supra*, are set forth in the margin.[1]

At the outset, counsel for the plaintiff contends in the brief filed on behalf of the plaintiff that the appraisement was invalid by reason of the failure of the collector to designate for examination for the purpose of appraisement, and by reason of the failure of the appraiser to examine, any of the packages in which the merchandise was imported, as is required under the provisions of section 499 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938

---

[1] (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

(19 U. S. C. § 1499). The pertinent portions of section 499, as amended, are set forth in the margin.[2]

The basis for the claim that the collector failed to designate any of the imported packages for examination is the fact that in the space on the summary sheet, customs Form 6417, reserved for the use of the collector in designating the packages or quantities to be examined, there appear certain hieroglyphics, which possibly could be taken to be "whf f m." According to the invoice, the cases or packages in which the merchandise was imported were marked with consecutive numbers, but an inspection of the summary sheet fails to show any case designated by the collector by number, or that any particular numbered case was examined by the appraiser or his subordinates.

In the case of *United States* v. *Stauffer Eshleman & Co., Ltd., et al.*, 9 Cust. Ct. 641, Reap. Dec. 5732, it was held that the designation "Wharf" was "not a designation of any quantity of the imported merchandise, but is merely a designation of the place of the examination," and that in such case, the mandatory provisions of section 499, *supra*, had not been complied with. It would appear, therefore, that the point raised by the plaintiff in this case as to the insufficiency of designation is well taken. Whether the said insufficiency had the effect of invalidating the appraisement herein, however, depends upon whether the plaintiff met the burden imposed in the last paragraph of section 499, as amended, of establishing—

* * * that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; * * *

As the writer understands the plaintiff's contention in this regard, it is as follows: The appraiser returned one value for each size and description of onyx slabs appearing on the invoice. It is contended

---

[2] * * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation or instruction, the application of which may be restricted to one or more individual ports or to one or more importations or one or more classes of merchandise, permit a less number of packages to be examined. * * *

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination or, if designated, was not actually examined, unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

that had the collector designated the requisite packages for examination, and had the appraiser actually examined the merchandise contained therein, the latter would have discovered that the merchandise actually imported of each size and description was not of uniform grade, but of three grades, each of which bore a different market value, and that the differences in the values of the different grades of onyx slabs were "such as to establish the incorrectness of the appraiser's return of value."

The evidence with respect to the different grades of onyx indicates that in the onyx trade in this country there are three grades, known as A, B, and C, and that a percentage price differential exists between each grade.

The owner of the company which was the ultimate consignee of the merchandise testified that samples were submitted to him with the offer of the merchandise, which samples were received in evidence as collective exhibit 3. It may very well be, as the witness testified, that the merchandise actually received did not conform to the samples, being inferior thereto, but the court is of the opinion, for the reasons which follow, that the plaintiff has failed to sustain the statutory burden of proof necessary before the appraisement may be declared to be invalid.

First of all, the evidence as to grades of onyx apparently relates only to the United States market for onyx slabs, and not to the Mexican market. For example, it was testified that the price of a grade A 5-inch piece, whether round or square, at the time of importation was $1.25; a grade B 5-inch piece was 25 to 30 cents less, or $1 to $0.95, and a grade C 5-inch piece was 60 cents less, or $0.65. These prices, including the lowest of them, are considerably in excess of both the claimed export value of the involved 5-inch round slabs (1.50 Mexican pesos or approximately $0.30 U. S.) and also the appraised value thereof (1.50 Mexican pesos plus 18.8 per centum). If the evidence was intended to show the situation in the United States market, as might be inferred by the use of United States currency in the prices, there was no evidence offered tending to establish that a similar situation existed in the Mexican market. On the other hand, if the evidence was intended to show the situation in the Mexican market, it would appear that both the entered and appraised values were considerably below the price of the lowest grade piece according to the evidence as to grade.

Furthermore, there is nothing in the record to show that the appraiser was bound to return a separate value for each grade of onyx within each size and description of material specified on the invoice. For all that appears, he may have found the appraised value for each size and description of material on the basis of it being a lot mixed as to grade. There is nothing on the invoice or entry to indicate that the merchandise involved was intended to be of any particular grade, and there is nothing in the record to show whether different grades were found in different numbered cases or whether in any particular case there was contained onyx of different grades.

I am of the opinion that the fact that examination of the entire shipment or some unspecified portion thereof would have disclosed the presence therein of three different grades of onyx, either standing alone or coupled with the evidence as to grades, is not such evidence as establishes the incorrectness of the appraiser's return of value, and, accordingly, on the record before me, am unable to declare the appraisement invalid.

The plaintiff's contention with respect to export value is based upon offers for sale of such or similar merchandise claimed to have been made by the exporter and by at least one other manufacturer of onyx slabs in Mexico under such circumstances as to reflect the export value as defined in the statute, section 402 (d), *supra*, of the merchandise at bar.

It appears from the evidence that the exporter was a corporation organized and incorporated in January 1947, under the laws of Mexico, apparently for the purpose of manufacturing onyx pieces and articles. Morris Fine, the owner of the Atlas Export Co., the ultimate consignee of the merchandise at bar, testified that the Mexican company started production on January 1, 1947, on a small scale. According to his testimony, his only interest in the Mexican company was that he "showed them how to produce the onyx" and advanced money to the company to purchase machinery to be used in the production of onyx.

He testified that he was in Mexico in March 1947; that at that time the Mexican company had many pieces made; and that at that time he saw certain written offers for sale of onyx slabs made by the Mexican company, one of which he identified as plaintiff's exhibit 1 for identification, which will be referred to hereinafter.

The witness stated that the merchandise in issue was offered to him by the exporter, and in corroboration produced a letter from the exporter dated June 10, 1947, confirming an order placed April 30, 1947. . As the merchandise here in question was shipped May 31, 1947, and the letter dated June 10, 1947, refers to an expectation "to effect shipment of your order either during the month of June or July," and as the description of the merchandise therein does not conform to the description of the merchandise in the case at bar, it is obvious that the letter, which was received in evidence over the objection of counsel for the defendant, does not refer to the instant shipment, and does not corroborate the witness' testimony as to the offer. It has no probative value in connection with the shipment involved herein.

The witness testified that in December 1946 or January 1947, he visited another onyx factory, named Onyx Marmolito, and received offers of slabs such as those involved at the same prices at which the merchandise here involved was offered to him by the exporter herein, and that such offers had no restrictions.

Mr. Fine testified that after importation he turned the merchandise at bar over to a concern known as the Lamp Products Co. for sale. Mr. Gene Levenberg, a salesman for and a partner in the Lamp Products Co., which he described as the factory representative of various mills selling onyx, tubing, and other parts that are used in the making of lamps, testified that in the course of his duty of checking the mail and having charge of correspondence, he received the letter formerly identified as plaintiff's exhibit 1 for identification, and it was thereupon received in evidence without objection as plaintiff's exhibit 1.

Plaintiff's exhibit 1 is on printed stationery headed "Onix Mexicano, S. A.," and is signed "Onix Mexicano, S. A." in typewriting, below which appears in handwriting the signature "Ralph Benveniste." The body of the letter reads as follows:

We offer for export sale the following onix slabs f. o. b. Mexico City:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5″ round | $1.50 | (Mexican Currency) | | $.30 cents U. S. Curr. | | | | |
| 6″ " | 2.00 | " | " | .40 | " | " | " | " |
| 6″ Square | 2.00 | " | " | .40 | " | " | " | " |
| 8″ round | 3.00 | " | " | .60 | " | " | " | " |
| 8″ square | 3.00 | " | " | .60 | " | " | " | " |

The above prices quoted are F. O. B. our factory and all other charges are to be paid by you. The charges will include transportation to steamer, ocean freight, consular papers and stamps, insurance, brokers fees, etc, and import duty payable in U. S.

Thanking you for your early and valued orders we remain,

The writer is unable to accept plaintiff's exhibit 1 as proof of an offer of sale such as would establish or tend to establish export value of the merchandise at bar within the meaning of the term as used in the statute. To begin with, the existence of the letter is inconsistent with the testimony of witness Fine given at page 41 of the transcript as follows:

By Mr. Spector:

X Q. You had nothing to do with the financial contributions to the capital of the Onyx Mexicano?—A. Only to advance the money for the machinery.

Judge Mollison: What did you get for the machinery which you advanced or delivered to them?

The Witness: *They agreed to give me the sole distribution here.* [Italics added.]

If Fine or his company, the Atlas Export Co., were to be the sole distributors in the United States for the merchandise, it seems strange that he should not have objected to offers for sale by the exporter, as he testified, to other concerns in the United States, including the Lamp Products Co., the addressee of plaintiff's exhibit 1. If in fact he was the sole distributor here, of course, no export value within the definition of the statute would exist.

Plaintiff's exhibit 1 is signed by "Ralph Benveniste." Mr. Benveniste's connection with both the exporter and the importer, as

developed in the record, is, to say the least, a peculiar one. Mr. Fine had known Mr. Benveniste for 10 years prior to March 1947 (Tr. p. 36); he was sent to Mexico by Mr. Fine to take charge of the administration of the factory; he had no financial interest in the machinery which Fine sent; he had no financial interest in the Mexican company, and was merely an employee (Tr. p. 45).

At page 68 of the transcript, the witness apparently contradicts part of the foregoing statements as to Mr. Benveniste's interest as follows:

By Mr. Carter:

  *   *   *   *   *   *   *

Q. I call your attention to paragraph 3, Defendant's Exhibit 5 [note—a Treasury representative's report, previously received in evidence]:

> This gentleman said that Onyx Mexicano, S. A., had been incorporated on January 2, 1947, as a Mexican company, with five Mexican nationals appearing as owners, officers and directors. This was a fictitious ownership however, the real owners of the plant being two Americans, Messrs. Morris Fine and Ralph Benveniste of New York City.

Is that or is that not a true statement?—A. That is not a true statement.

Judge Mollison: What is the truth in respect to that statement, if anything?

The Witness: The true statement is that these Mexican nationals who were there before organized this company, *and I and Mr. Benveniste were to advance the machinery and the money for it.* [Italics added.]

At page 46 of the transcript, Mr. Fine characterized Mr. Benveniste as an "administrator." He then testified:

By Mr. Spector:

  *   *   *   *   *   *   *

X Q. What do you mean, administrator?—A. He took care of the office, sales, books, records.

X Q. Was he there for the purpose of protecting your interests?—A. That is right.

Judge Mollison: Was he an employee of yours individually, or your company?

The Witness: Of the company.

Judge Mollison: What company was that?

The Witness: Onyx Mexicano.

By Mr. Spector:

X Q. You sent him to the Onyx Mexicano to administer the company so as to protect your financial interest in that company?—A. That is right.

It will be recalled that Mr. Benveniste signed the letter, plaintiff's exhibit 1, containing the offer to the Lamp Products Co., and consequently apparently was empowered by the Mexican company to bind it by offers for sale. The fact that Mr. Fine had such influence in the affairs of the exporting company as would enable him to install his representative as administrator of the company tends to impair the concept contended for by the plaintiff that offers for sale to him by the said exporting company or its administrator would

reflect the situation contemplated by the export value statute, i. e., free offer for sale, in the ordinary course of trade, etc.

In fact, a review of the entire record as to the relationships existing between the exporter and its administrator and the importer and the Lamp Products Co., which was involved in the matter both as the offeree in plaintiff's exhibit 1 and as the ultimate disposer of the merchandise actually imported, leaves one with the conclusion that none of the parties mentioned dealt with each other at arm's length or under such circumstances as would suggest that offers made among them would reflect the ordinary course of trade in the purchase and sale in Mexico of merchandise such as that at bar.

Under these circumstances, I am convinced that both Mr. Fine's testimony as to the offer made to him by the exporter herein, and the evidence of offer to the Lamp Products Co., do not possess that degree of probative force necessary to establish the contention of the plaintiff with respect to export value.

The only other evidence as to export value is that contained in Mr. Fine's testimony as to the offer made to him by Onyx Marmolito in December 1946 or January 1947. The merchandise here involved was exported on May 31, 1947, and there is no substantial evidence in the record tending to establish that the prices involved in the Onyx Marmolito offer still obtained at the time of exportation of the instant merchandise.

The situation at this point is this: The plaintiff has failed to offer such proof in support of values for the merchandise other than those found by the appraiser as would establish a *prima facie* case which would overcome the presumption of correctness attaching to the appraised values by reason of the last paragraph of section 2633 of the Judiciary and Judicial Procedure Act of 1948.[3] An examination of the evidence offered by the defendant, which consists of two reports of Treasury representatives, shows that neither contains any evidence which would tend to support either the appraised values or those contended for by the plaintiff. In this situation, the statutory presumption of correctness referred to above is unimpaired, and the values found by the appraiser must be presumed to be the values of the merchandise.

I therefore find as facts:

(1) That the merchandise involved consists of certain round and square onyx slabs exported from Mexico on May 31, 1947.

(2) That the said merchandise was appraised on the basis of cost of production, as defined in section 402 (f) of the Tariff Act of 1930, at invoiced unit prices plus 18.8 per centum, packed.

---

[3] § 2633 Evidence of value, upon reappraisement; burden of proof

   *        *        *        *        *

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

(3) That at the time of exportation of the instant merchandise, such or similar merchandise was not (a) freely offered for sale for home consumption to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade; or (b) freely offered for sale to all purchasers in the principal markets of Mexico, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States; or (c) freely offered for sale in the principal market of the United States to all purchasers, in the usual wholesale quantities and in the ordinary course of trade.

(4) That the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind—

is the appraised value as to each item involved.

I conclude as matters of law:

(1) That cost of production, as defined in section 402 (f) of the Tariff Act of 1930, is the proper basis of value of the merchandise here involved, and

(2) Such cost of production as to each item involved is the appraised value.

Judgment will issue accordingly.